IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CECIL KEITH HAYES | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-05-CV-1974-M |
| NATHANIEL QUARTERMAN, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Cecil Keith Hayes, a Texas prisoner, has filed an application for writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  For the reasons stated herein, the application should be

conditionally granted.

I.

Petitioner was convicted of aggravated robbery and sentenced to 70 years confinement.  His

conviction and sentence were affirmed on direct appeal.  *Hayes v. State*, No. 11-02-00348-CR, 2003

WL 22064066 (Tex. App.--Eastland, Sept. 4, 2003, pet. ref'd).  An application for state post-

conviction relief was denied without written order.  *Ex parte Hayes*, No. 61,529-01 (Tex. Crim. App.

Jun. 29, 2005).  Petitioner then filed this action in federal district court.

II.

In two grounds for relief, petitioner contends that:  (1) the prosecutor exercised her

peremptory challenges in a discriminatory manner to exclude all eligible African-Americans from

the jury; and (2) he received ineffective assistance of counsel at trial and on appeal because his attorney did not object to the admission of extraneous offense evidence on double jeopardy grounds.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24, 146 L.Ed.2d 389 (2000).  Federal habeas courts review questions of law and mixed questions of law and fact under subsection (d)(1).  Pure questions of fact are reviewed under subsection (d)(2).  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 122 S.Ct. 194 (2001).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 120 S.Ct. at 1523.  An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  To be unreasonable, the application of clearly established federal law must be more than merely incorrect. *Gardner v.*

-2-

*Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  The standard is one of "objective reasonableness."

*Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2220 (2001), *quoting*

*Williams*, 120 S.Ct. at 1521-22.  Factual determinations made by state courts are presumed to be

correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by

clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Moody v. Quarterman*, ___ F.3d

___, 2007 WL 102870 at *6 (5th Cir. Jan. 17, 2007).

B.

Petitioner first contends that the prosecutor used eight of her 11 peremptory challenges in

an attempt to exclude all eligible African-Americans from jury service in violation of the equal

protection clause of the Fourteenth Amendment to the United States Constitution.

1.

The Fourteenth Amendment guarantees every defendant in a criminal case equal protection

under the law.  *Hernandez v. Texas*, 347 U.S. 475, 477, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954).

This right extends to the jury selection process.  *Swain v. Alabama*, 380 U.S. 202, 204, 85 S.Ct. 824,

826, 13 L.Ed.2d 759 (1965); *Strauder v. West Virginia*, 10 Otto 303, 100 U.S. 303, 305-08, 25 L.Ed.

664 (1879).  Thus, a prosecutor may not use peremptory challenges to exclude potential jurors solely

on the basis of their race.  *Swain*, 85 S.Ct. at 837-38.  Prior to 1986, the use of peremptory strikes

against minority jurors was not unconstitutional absent proof of a historical pattern of racial bias.

*Id.* at 837-38.  The Fifth Circuit explained this burden as follows:

> In order to prevail [on a *Swain* claim], [petitioner] must prove that his
> prosecutor had a systematic and intentional practice of excluding
> blacks from traverse juries in criminal trials through the exercise of
> peremptory challenges, and that this practice continued unabated
> through petitioner's trial.

*Evans v. Cabana*, 821 F.2d 1065, 1068 (5th Cir.), *cert. denied*, 108 S.Ct. 5 (1987), *citing Willis v. Zant*, 720 F.2d 1212, 1220 (11th Cir. 1983), *cert. denied,* 104 S.Ct. 3548 (1984).  Unless a defendant had evidence of purposeful and systematic discrimination, the prosecutor was entitled to a presumption that he used his peremptory strikes in a proper manner.  *Swain*, 85 S.Ct. at 837.

The Supreme Court revisited *Swain* two decades later in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  Recognizing that it is often impossible for a defendant to prove the systematic exclusion of minorities from jury service over an extended period of time, the Court rejected this evidentiary formulation "as inconsistent with standards that have been developed since *Swain* for assessing a prima facie case under the Equal Protection Clause." *Batson*, 106 S.Ct. at 1721.[1]  No longer were defendants required to establish a historical pattern of discrimination in the use of peremptory strikes.  Under *Batson*, "a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection *in his case*."  *Id.* at 1722 (emphasis in original).

*Batson* articulated a three-part test for proving purposeful discrimination in the exercise of peremptory challenges, similar to the test for proving discrimination under Title VII.  *Id.* at 1721 n.18 (expressly referencing the "burden of proof rules" in Title VII disparate treatment cases).  First, the defendant must raise an inference that the prosecutor excluded potential jurors on the basis of race.  *Id.* at 1723; *United States v. Wallace,* 32 F.3d 921, 925 (5th Cir. 1994).  A defendant may satisfy this burden in a variety of ways, such as by showing a pattern of strikes against minority jurors on the venire panel or by statements made by the prosecutor during the voir dire examination.

---

[1]  The Supreme Court observed that the "crippling burden" imposed by *Swain* rendered the prosecution's use of peremptory challenges "largely immune from constitutional scrutiny." *Batson*, 106 S.Ct. at 1721.

*Batson*, 106 S.Ct. at 1723.   Second, if the defendant makes a prima facie showing of the discriminatory use of peremptory challenges, the burden shifts to the prosecution to articulate a race-neutral explanation for each of the challenged strikes. *Id.* at 1723-24; *Wallace*, 32 F.3d at 925.  This inquiry focuses on the facial validity of the explanation given by the prosecutor for striking minority jurors.  "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."  *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (citations omitted); *see also United States v. Perkins,* 105 F.3d 976, 978 (5th Cir. 1997).  Third, the court must determine whether the defendant has carried his burden of proving purposeful discrimination.  *Batson,* 106 S.Ct. at 1724; *Wallace,* 32 F.3d at 925.  This final step of the *Batson* analysis involves evaluating "the persuasiveness of the justification" offered by the prosecutor.  *See Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006), *quoting Elem*, 115 S.Ct. at 1771.  However, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."  *Id.*

A finding by the state court that the prosecutor exercised his peremptory challenges without any discriminatory intent is accorded great deference because it largely turns on an evaluation of the credibility or demeanor of the attorney who exercised the challenge.  *See Hernandez v. New York,* 500 U.S. 352, 365, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991); *United States v. Bentley-Smith,* 2 F.3d 1368, 1373 (5th Cir. 1993).  Such a finding is a pure question of fact that will not be disturbed on federal habeas review unless it is "objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary."  *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1028 (2006), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 341, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) ("*Miller-El I*").  *See also Collins*, 126 S.Ct. at 976 ("Reasonable

minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

2.

Petitioner, an African-American, was charged with aggravated robbery.  The original venire consisted of 63 prospective jurors.  Five members of the panel were struck for cause and 18 others were excused by agreement of the parties.  Of the remaining 40 jurors, eight were African-American and two were Hispanic.  After the lawyers submitted their strike lists, defense counsel objected that the prosecution had struck every African-American on the panel.  (SF-II at 167).[2]  In response, the prosecutor offered specific reasons for striking each African-American juror.  With respect to Juror No. 6, Gertrude Hashaway, the prosecutor explained:

> We struck Number 6, she--first and foremost, she was asleep for a large portion of the voir dire.  She is extremely grandmotherly.  She had--she seemed rather clueless in response to the questions, especially in response to the Judge's questions.  I mean, she was sleeping, and then it would be kind of in and out, and her response, she had no response, in fact, to most of the Judge's questions.  The other people would shake their head or answer 'yes' or 'no,' or something to that effect.  When she wasn't asleep, she was clueless, and didn't appear to understand what was going on, certainly concepts and certainly questions.  She seems like a very nice lady, but very grandmotherly, and we feel that this is a punishment case, and that aspect of it concerned us.

(*Id.* at 167-68).

As grounds for striking Juror No. 11, Elwood Beasley, the prosecutor stated:

---

[2]  Under Texas law, the prosecution and defense each are entitled to 10 peremptory challenges, plus one additional peremptory challenge for an alternate juror.  *See* TEX. CODE CRIM. PROC. ANN. art. 35.15(b) & (d).  Out of 11 total challenges, the prosecutor struck eight African-Americans, one juror with an Hispanic surname, and two whites.  (*See* St. App. Tr. at 34).

He gave conflicting answers in response to our questions. I was clear in explaining the requirements of a gun, would you require us to bring a gun even if he believed eyewitness testimony beyond a reasonable doubt, and he indicated that yes, that he would. And then certainly changed his answer with Mr. Roberts. We believe that inconsistency indicates he's not understanding what's going on or has some questions. He currently has a cousin that's in TDC right now. He-- while he wasn't as near asleep as Juror Number 6 was, he had the heavy eyes. His eyes kept closing, his head kept bobbing, he was clearly having trouble staying awake. He also mentioned, in his factor as a punishment, a number three as a factor in his punishment.

(*Id.* at 168).

The prosecutor struck Juror No. 15, Cynthia Richard, because:

She . . . had no response to the Judge's questions. Her head didn't shake. She didn't answer out loud. She just sort of sat there. She received a bad juror rating on an assault with deadly weapon. Why [sic] that in and of itself does not--is not sufficient cause, in a combination of other things, that can be one thing that's considered. I think the most important thing, she was seriously hostile to the State. She clearly--her body language. She had absolutely no sense of humor. She was scowling at me. I wasn't comfortable with her looking at me. She also was a teacher, which they're notoriously liberal in--especially in their punishment, as we indicated earlier. This is, we feel, a punishment case, and she as well indicated three in her reasoning as her punishment, which was rehabilitation.

(*Id.* at 169).

In support of the peremptory strike of Juror No. 16, Linda Denise Jackson, the prosecutor

offered:

[She] . . . changed her answers, gave inconsistent answers, indicated she would need a gun to convict, even after explanation, then changed her answers with Mr. Roberts. She, as well, mentioned three as a punishment of--the rehabilitation factor as the punishment. She-- it did concern us when she changed her answer with Mr. Roberts. What she said was, "Well, if I believe, if I believe," kept harping on the "if I believe," sort of implying that she might have some higher burden of proof of the State in order to believe one eyewitness, if we

> were unable to produce the gun.  She also currently has a cousin out
> on bond in a pending case here in Dallas County.

(*Id.* at 169-70).

With regard to her strike of Juror No. 22, Rickie Parker, the prosecutor told the court:

> When I asked him specifically regarding if he--if himself or a family
> member or friend had ever been arrested, charged or convicted, he
> lied.  He has been arrested on violation of a court order and arrested
> on another charge, but has also been convicted of assault, family
> violence and DWI, and was certainly not forthcoming with that.  He
> mentioned a three as well in his punishment reasons, for
> rehabilitation.  He also had an earring in his ear, and that aspect of
> that bothered us.  His attitude seemed a little hostile, and I think it's
> been made clear it's because he, you know, had these convictions
> against him.

(*Id.* at 170).

As for Juror No. 26, Mary Turner, the prosecutor stated:

> She, as well, mentioned three as a punishment factor for her.  She
> was curt in her answers with the State, but more importantly, she has
> a nephew that's serving his 40-year sentence for, I believe she
> indicated some sort of robbery, and her quotes were, "He didn't do
> it.  He's taking the wrap [sic] for someone else.  The punishment of
> 40 years seems unfair."  She indicated it was just a small amount of
> money and it didn't seem fair to her that her cousin was treated this
> way – or her nephew was treated this way.  So we struck her for all
> of those reasons.

(*Id.* at 170-71).

The prosecutor gave several reasons for striking Juror No. 35, Annie Lee:

> [S]he also changed her answer, was inconsistent with Mr. Roberts
> and I.  She indicated she would require more than one witness, even
> though I explained the rules to her, and when she changed her
> answers, her--I believe her direct quote was, "Well, I could--I would
> prefer to, but if I believed them, if I was really convinced and made
> a real strong effort and really convinced in part."  Again, implying

-8-

> perhaps a higher burden on the State and their witnesses, and the fact
> that she was unemployed, we struck her.

(*Id.* at 171).

With regard to Juror No. 46, Donna Sue Jackson, the prosecutor explained:

> We struck 46 for the same reason as some of the other jurors that
> changed their answers.  All the jurors that gave inconsistent answers,
> we struck.  She would require the State to produce a gun, then
> changed her mind, you know, with the Defense attorney and said,
> "Well, I guess"--she said, "I guess if they were believable.  I guess I
> wouldn't need a gun."  With this kind of "I guess," again, left it sort
> of omnibus [sic].  And she indicated she had friends or family
> members, arrested, charged or convicted, she said she had a whole
> list of people, and then did point out one member of the family in
> which he--I believe the quote was, she called the process unfair to
> that particular person.  And that aspect of it concerned the State as
> well; so, for those reasons, we struck those jurors.

(*Id.* at 171-72).

The trial judge then called upon petitioner, through his attorney, to rebut each of the reasons

given by the prosecutor for striking the African-American jurors.  Regarding those panel members

who allegedly changed their minds about the need to see a weapon in order to obtain a conviction,

defense counsel accused the prosecutor of using her hypothetical questions as a tool for striking

jurors by presenting "a slanted, one-sided explanation" of this requirement and not fully exploring

the concept.  (*Id.* at 172).  Counsel further protested that he did not notice any jurors falling asleep,

but if they did, the prosecutor should have brought that matter to the attention of the bailiff.  (*Id.* at

173).  As for the African-American jurors who allegedly were struck based on their belief that

rehabilitation was a primary purpose of punishment, defense counsel pointed out that most of those

jurors also believed in the punitive aspects of punishment, much like six or seven non-African-

Americans who were not struck by the prosecutor.  (*Id.*).  Finally, counsel argued that there was no

evidence in the record to substantiate the claim that any African-American juror was confused, inattentive, hostile, or failed to respond to relevant questions.  Rather, he accused the prosecutor of fabricating these subjective explanations to justify her discriminatory use of peremptory challenges. (*Id.* at 174-75).

After considering the arguments of counsel, the trial court sustained the *Batson* objection to Juror No. 6, Gertrude Hashaway, thereby rejecting the prosecutor's reasons for striking Hashaway because she fell asleep, did not respond to questions, and was grandmotherly and careless in her appearance.  (*Id.* at 178).  The judge also expressed concern "that out of the African-American jurors, that seven of them, plus the alternate, were struck, which causes me to look at this with perhaps--in a serious manner."  (*Id.* at 179-80).  Notwithstanding this concern, petitioner's other objections to the prosecutor's use of peremptory challenges were overruled.  Although the judge found no *Batson* violation with respect to Juror No. 15, Cynthia Richard, all but one of the reasons proffered by the prosecutor for striking Richard were called into question:

> Considering Number 15 [Richard], much of the same thing as Number 6 [Hashaway], no response to the Judge's question, bad jury rating.  There's nothing before the Court that would indicate what that piece was or the type of case it was, and I assume that she received a bad juror rating because of the outcome of the case.  She--counsel indicated that she was hostile in her body language and had no sense of humor, and that she was a teacher and, therefore, liberal, and that she answered number three [rehabilitation as a primary purpose of punishment].  The only one of those that I would seriously consider is the hostile and body language, and I know that some jurors do promote hostility to a particular lawyer, of the lawyer's style, of the questioning of them in voir dire, and that, again, of course, would be nonracially.  If you will either--it doesn't necessarily--is not necessarily nonracial.  The State's explanation that she seemed to have some personal hostility to the assistant district attorney, and that nothing has convinced me that that did not take place, even though I didn't see it, but wasn't necessarily looking for that, the Court will excuse that--will hold that to be the reason--nonracial reason for

> excusing that juror, the fact that the State has said that that juror was
> personally hostile to the district attorney, and her body language.

(*Id.* at 178-79).

On direct appeal, the state court held that each of the explanations given by the prosecutor for striking the African-American jurors was race-neutral and facially valid. *Hayes*, 2003 WL 22064066 at *2-3, *citing Adanandus v. State*, 866 S.W.2d 210, 224-25 (Tex. Crim. App. 1993), *cert. denied*, 114 S.Ct. 1338 (1994) (belief that rehabilitation is a primary goal of punishment is race-neutral reason for exercising peremptory strike); *Earhart v. State*, 823 S.W.2d 607, 625 (Tex. Crim. App. 1991), *cert. granted and jmt. vacated on other grounds*, 113 S.Ct. 3026 (1993) (same as to juror who lacked steady employment); *Dorsey v. State*, 940 S.W.2d 169, 175 (Tex. App.--Dallas 1996, pet. ref'd) (same as to juror who appeared to sleep during voir dire, was inattentive, and had relatives convicted or charged with a criminal offense); *Ivatury v. State*, 792 S.W.2d 845, 848 (Tex. App.--Dallas 1990, pet. ref'd) (same as to non-verbal behavior and bad juror rating in prior case); *Anderson v. State*, 758 S.W.2d 676, 680 (Tex. App.--Fort Worth 1988, pet. ref'd) (same as to juror who had history of trouble with the law); *Chambers v. State*, 724 S.W.2d 440, 442 (Tex. App.--Houston [14th Dist.] 1987, pet. ref'd) (same as to "body english" exhibited by juror).[3]  In rejecting petitioner's *Batson* claim, the appellate court provided little analytical insight into the reasons for its decision, writing only that:

---

[3] Fifth Circuit precedent is in accord.  *See, e.g. United States v. Jimenez*, 77 F.3d 95, 101 (5th Cir. 1996) (conviction of close relative is race-neutral explanation for striking juror); *United States v. Maseratti*, 1 F.3d 330, 335-36 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 1096 (1994) (sleeping during voir dire is race-neutral explanation); *Murphy*, 416 F.3d at 433, 439 (inconsistent answers, appearance and demeanor of juror, and lying about past criminal record are race-neutral reasons); *Bentley-Smith*, 2 F.3d at 1374 n. 6 ("This court repeatedly has upheld peremptory challenges based upon intuition and other objectively unverifiable considerations.").

> The record reveals that the trial court conducted an extensive review of the reasons offered by the State for striking the minority veniremembers. This review required the trial court to make an evaluation of the prosecutor's credibility and its own observation of the veniremembers. The trial court's ruling was not clearly erroneous.

*Hayes*, 2003 WL 22064066 at *3. Petitioner now challenges that decision on federal habeas review.[4]

### 3.

The court initially observes that petitioner has established a prima facie *Batson* violation by virtue of the fact that the prosecutor used eight of her 11 peremptory challenges in an attempt to exclude all eligible African-Americans from jury service. These raw numbers are remarkable and raise an inference that the prosecutor excluded potential jurors on the basis of race. *See, e.g. Moran v. Clarke*, 443 F.3d 646, 651 (8th Cir. 2006) (defendants established a prima facie case under *Batson* where plaintiff attempted to strike all African-American members of jury panel); *Green v. Travis*, 414 F.3d 288, 299 (2nd Cir. 2005) (defendant established prima facie *Batson* violation where prosecutor struck all African-American and Hispanic panel members not already excused for cause); *United States v. Sowa*, 34 F.3d 447, 452 (7th Cir. 1994), *cert. denied*, 115 S.Ct. 915 (1995) ("The government easily made its prima facie case that the peremptory challenges were motivated by race; each and every black venireperson was challenged."). In response to petitioner's prima facie showing of discrimination, the prosecutor articulated race-neutral explanations for striking each African-American juror. Therefore, this case, like most cases involving discriminatory jury selection practices, turns on the third and final step of the *Batson* analysis.

---

[4] Petitioner did not raise a *Batson* claim in his state writ of habeas corpus.

a.

"Whether a defendant has carried his burden under *Batson's* third step to prove purposeful discrimination is based on the persuasiveness and credibility of the prosecutor's justification for his exercise of the peremptory strike." *Moody*, 2007 WL 102870 at *5, *citing Elem*, 115 S.Ct. at 1771. At this stage, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Miller-El I*, 123 S.Ct. at 1040, *quoting Elem*, 115 S.Ct. at 1771.  In that instance, the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. *Id.*  A side-by-side comparison of minority panel members who were struck by the prosecution and non-minority jurors who were allowed to serve can also be probative of racial bias. *See Miller-El v. Dretke*, 545 U.S. 231, 241, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005) ("*Miller-El II*") (noting evidentiary strength of such close comparisons); *Murphy*, 416 F.3d at 438.  As the Fifth Circuit explained:

> We would tend to reverse if the State's reasons were fantastic or inconsistent with its treatment of similar non-minority jurors.  Where its reasons are believable, however, the inquiry is one of credibility. Obviously, this question of fact turns heavily on demeanor and other issues not discernible from a cold record, such that deference to the trial court is highly warranted[.]

*Ladd v. Cockrell*, 311 F.3d 349, 356 (5th Cir. 2002) (internal quotations and citations omitted).  The ultimate conclusion of discriminatory intent is a pure question of fact which is entitled to deference on federal habeas review unless rebutted by clear and convincing evidence. *Id.*

b.

A side-by-side comparison of prospective jurors shows that six of eight African-Americans struck by the prosecution were not similarly situated to other jurors who shared some, but not all, of the same characteristics.  For example, the prosecutor articulated four reasons for striking Juror

-13-

No. 11, Elwood Beasley:  (1) he gave conflicting answers regarding the need to see a gun in order to obtain a conviction; (2) he had a cousin in prison; (3) he had trouble staying awake; and (4) he listed rehabilitation as one of the reasons for punishment.  (SF-II at 168).  Although three non-African-American panel members also had relatives in jail and nine others believed in the rehabilitative aspects of punishment, none of those jurors gave inconsistent answers or appeared to fall asleep during voir dire.  (*Compare id.* at 114, 118-19, 121 *with id.* at 75-76, 100, 140-41).  The prosecutor struck Juror No. 16, Linda Denise Jackson, because:  (1) she initially indicated the need to see a gun in order to convict; (2) she gave inconsistent answers on the gun question; (3) she believed in rehabilitation; and (4) she had a cousin out on bond.  (*Id.* at 169-70).  Of the non-African-Americans who had at least one characteristic in common with Linda Jackson, none gave inconsistent answers to questions, implied that the state had a higher burden of proof, or had a family member out on bond.  (*Id.* at 73-74, 142-43, 111-12).  Nor was any non-African-American juror similarly situated to Juror No. 22, Rickie Parker, who:  (1) lied regarding a prior arrest; (2) wore an earring; and (3) appeared hostile to the prosecution.  (*Id.* at 115, 170).  Juror No. 26,  Mary Turner, was struck because:  (1) she gave "curt" answers to several questions; (2) she had a family member in jail; (3) she believed that a relative had been unfairly convicted and punished; and (4) she listed rehabilitation as a primary purpose of punishment.  (*Id.* at 170-71).  No non-African-American juror had more than two of these characteristics.  (*See id.* at 114, 118-19, 121, 100-02, 104).  The prosecutor struck Juror No. 35, Annie Lee, because:  (1) she gave inconsistent answers to questions; (2) she suggested that more than one witness would be required to convict; and (3) she was unemployed.  (*Id.* at 171).  No other juror had any, much less all three, of these characteristics.  (*See*

*id.* at 90, 147 & Pet. Mem. Br., Exh. B at #8, 18, 31).[5]  Juror No. 46, Donna Sue Jackson, was struck because:  (1) she gave inconsistent answers; (2) she had multiple family members and friends who had been arrested, charged or convicted of crimes; and (3) she believed that the criminal justice system was unfair.  (SF-II at 171-72).   Although one white juror also had multiple relatives or acquaintances with criminal records, that juror did not give inconsistent answers and never questioned the fairness of the criminal justice system.  (*Compare id.* at 117-18 *with id.* at 78, 143-44, 123-24).  In sum, only two non-African-American jurors who remained on the panel shared more than a single attribute in common with Beasley, Parker, Turner, Lee, Linda Jackson, and Donna Jackson, and each of those two non-African-Americans had only two of five characteristics in common with one of the African-American panelists.  There simply is no evidence, other than the raw numbers, to suggest that the reasons given by the prosecutor for striking these jurors were a pretext for discrimination.[6]

c.

The court reaches a different conclusion with respect to the peremptory challenges used against Juror No. 15, Cynthia Richard.  According to the prosecutor, Richard was struck because: (1) she did not respond to the judge's questions; (2) she had a "bad juror rating;" (3) she exhibited hostile body language; (4) she was a teacher; and (5) she believed that rehabilitation was one of the

---

[5]  Three white jurors were "retired," but none listed themselves as "laid off" or "unemployed" as did Lee.  (*Compare* Pet. Mem. Br., Exh. B at #8, 18, 31 *with id.*, Exh. B at #35).

[6]  Petitioner asks the court to take judicial notice of his trial in another aggravated robbery case where the prosecutor struck five African-Americans from the jury panel.  *Hayes v. State*, No. 11-02-00244-CR, 2003 WL 2010949 (Tex. App.--Eastland, May 1, 2003).  Even if the court takes judicial notice that the Dallas County District Attorney represented the state in the other aggravated robbery trial and that petitioner raised a *Batson* claim on direct appeal, such evidence is not probative of discrimination in *this* case.  There is no evidence in the record that the same prosecutor tried both cases.  Moreover, two African-Americans were seated on petitioner's jury in the other aggravated robbery trial.  The adjudicative facts that petitioner asks the court to judicially notice do not help him establish a pattern of racial discrimination.

primary purposes of punishment.  (SF-II at 169).  The first reason was specifically rejected by the trial judge, who noted that "[t]he few questions I had dealt with the qualifications of the jurors, and just general questions that [were] directed to the entire panel as to whether they could accept certain propositions of law." (*Id.* at 178).  The judge also discredited three of the other reasons for striking Richard--that she had a bad juror rating, that she was a teacher, and that she believed in the rehabilitative aspects of punishment.  Although the judge did not articulate a basis for rejecting the prosecutor's explanations, the record shows that two non-African-American teachers, Juror No. 24, Patrick Lopez, Jr., and Juror No. 36, Ret Little, served on the jury.  (*See* Pet. Mem. Br., Exh. B, Master Jury List).  Another non-African-American with a bad juror rating, Juror No. 45, Deborah Noble, sat as an alternate.  (Evid. Hrg., Pet. Exh. 2).  This disparity justifiably caused the trial judge to question the propriety of the prosecutor's reasons for striking Richard.  Moreover, the prosecutor misrepresented Richard's response to the punishment question.  When asked if she believed in punishment, deterrence or rehabilitation, Richard chose punishment and deterrence.  (*Id.* at 101).  Contrary to what the prosecutor told the trial judge, Richard never expressed a belief in rehabilitation.

Having rejected all but one of the explanations for striking Richard, the trial court accepted only the hostile body language as a valid reason.  Significantly, the judge did not observe any personal hostility on the part of this juror toward the prosecutor.  (*Id.* at 179).  Instead, the trial judge blindly accepted the prosecutor's representation that Richard "was seriously hostile to the State," "had absolutely no sense of humor," and "was scowling at me." (*Id*. at 169).  In so doing, the judge implicitly found the prosecutor's hostility argument to be credible.  Thus, the issue squarely

presented is whether this credibility determination was objectively unreasonable in light of the evidence presented in the state court proceeding.

i.

"Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller-El-I*, 123 S.Ct. at 1040.  The only specific behavior cited by the prosecutor in support of her hostility argument was that Richard "was scowling at me"-- something the trial judge did not observe.  The absence of any objective evidence bearing on Richard's hostility, a fact pointed out by defense counsel at the *Batson* hearing, undermines the plausibility of this reason.  Additionally, the prosecutor conflated Richard's alleged hostility with her lack of a sense of humor-- another subjective assessment for which there is no objective verification.  It is unclear how the presence or absence of a sense of humor is relevant to the ability to serve as a juror in a felony case.  This seemingly implausible explanation further undermines the prosecutor's credibility.  *See United States v. Jones*, 245 F.3d 990, 993 (8th Cir. 2001), *citing United States v. Jenkins,* 52 F.3d 743, 747 (8th Cir. 1995) (pretext can be based on a finding that the factors used to explain the strike are irrelevant to a person's ability to perform as a juror in the particular case).

ii.

Notwithstanding the purely subjective and inherently suspect reasons given by the prosecutor in support of her hostility argument, petitioner cannot establish a *Batson* violation unless he rebuts the ultimate finding of no purposeful discrimination by clear and convincing evidence.  Because direct evidence of discrimination is especially rare, the Supreme Court has fashioned special rules

to ease the evidentiary burdens in equal protection cases.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271, 109 S.Ct. 1775, 1802, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring) ("[T]he entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by.").   Once such rule permits proof of discriminatory intent by circumstantial evidence.  In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), a Title VII case cited with approval in both *Miller-El I* and *Miller-El II*, a unanimous Supreme Court held:

> Proof that the [employer's] explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.   In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.   Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.  Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Reeves*, 120 S.Ct. at 2108-09 (citations and punctuation omitted).  *See also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100, 123 S.Ct. 2148, 2154, 156 L.Ed.2d 84 (2003) (noting that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence" in proving discrimination).   These special rules apply with equal force in the *Batson* context.  *See Hernandez*, 111 S.Ct. at 1866; *Batson*, 106 S.Ct. at 1721 n.18 &

19; *see also United States v. Lance*, 853 F.2d 1177, 1181 (5th Cir. 1988) (recognizing analogies between *Batson* and Title VII jurisprudence).

Here, the circumstantial evidence leads to the inescapable conclusion that the prosecutor struck Richard from the jury panel on account of her race. First, the court again observes that the prosecutor used eight of 11 peremptory challenges in an attempt to exclude *all* African-Americans from jury service. In *Miller-El*, the Supreme Court described the prosecutor's attempt to strike 91% of the eligible African-American panel members as "remarkable" and noted that "[h]appenstance is unlikely to produce this disparity." *Miller-El II*, 125 S.Ct. at 2325, *quoting Miller-El I,* 123 S.Ct. at 1042. *See also Holloway v. Horn*, 355 F.3d 707, 722 (3d Cir.), *cert. denied,* 125 S.Ct. 410 (2004) (noting that use of 11 out of 12 strikes against African-Americans was the "most striking factor" suggesting an intent to keep blacks off the jury). In this case, the prosecutor attempted to remove 100% of African-Americans from the jury panel--evidence that is both "striking" and beyond "remarkable." *Cf. United States v. Terrazas-Carrasco*, 861 F.2d 93, 95 (5th Cir.1988) (rejecting *Batson* claim where prosecutor used six of seven peremptory challenges against Hispanic panel members, but suggesting that defendant's argument might be stronger "[h]ad the prosecutor used all of his challenges to exclude members of defendant's race").

Equally compelling is the fact that the trial court sustained a *Batson* objection to the peremptory challenge used against Juror No. 6, Gertrude Hashaway. The prosecutor explained that Hashaway was struck because she fell asleep, did not respond to questions, and was grandmotherly and careless in her appearance. (SF-II at 167-68). All three reasons were rejected by the trial judge. (*See id.* at 178). This, together with the pattern of peremptory strikes used against other African-American jurors, should have caused the judge to question the prosecutor's credibility and reject her

purely subjective hostility argument. *See United States v. Nelson*, 450 F.3d 1201, 1209 (10th Cir.), *cert. denied*, 127 S.Ct. 326 (2006) ("[T]he prosecutor's use of peremptory strikes directed at other African-American veniremembers is a relevant factor to be considered" in evaluating a *Batson* challenge); *Bennett v. Collins*, 852 F.Supp. 570, 581 (E.D. Tex. 1994) (reasons for striking a juror become even less believable when the pattern of challenges against other minority panel members emerges).

The court also notes that the prosecutor misrepresented Richard's answer to the punishment question. Contrary to what the prosecutor told the trial judge, Richard never expressed a belief in rehabilitation. Instead, she believed in the punitive and deterrent aspects of punishment. (*See* SF-II at 101). Although a misstatement by the prosecutor can "plausibly be viewed as an innocent transposition," *see Collins*, 126 S.Ct. at 975, such a conclusion is unsupportable here. At the *Batson* hearing, the prosecutor argued that punishment "is the major focus of this particular case, and that's why it's an important question." (SF-II at 176). Given the importance of this issue to the state, the prosecutor's failure to accurately apprise the court of Richard's response to the punishment question cannot be dismissed as a mere mistake. It can only be viewed as evidence of pretext. *See McClain v. Prunty*, 217 F.3d 1209, 1221 (9th Cir. 2000) ("Where the facts in the record are objectively contrary to the prosecutor's statements, serious questions about the legitimacy of a prosecutor's reasons for exercising peremptory challenges are raised."); *Caldwell v. Maloney*, 159 F.3d 639, 651 (1st Cir. 1998), *cert. denied*, 119 S.Ct. 1152 (1999) ("Serious questions are also raised in cases in which the facts in the record are simply objectively contrary to the prosecutor's statements.").

Finally, and perhaps most significantly, the trial court had already rejected four of the five reasons offered by the prosecutor for striking Richard--that she did not respond to certain questions,

that she had a bad juror rating, that she was a teacher, and that she believed in the rehabilitative aspects of punishment. (*See* SF-II at 179-80). Having implicitly determined that those explanations were not worthy of belief, it was unreasonable for the judge to blindly accept the prosecutor's representation that Richard exhibited hostile body language-- an unverified, subjective assessment vigorously disputed by defense counsel. *See, e.g. Lewis v. Lewis*, 321 F.3d 824, 830 (9th Cir. 2003) ("[I]f a review of the record undermines the prosecutor's stated reasons, or many of the proffered reasons, the reasons may be deemed a pretext for racial discrimination."); *Riley v. Taylor*, 277 F.3d 261, 283 (3d Cir. 2001), *quoting United States v. Alvarado*, 923 F.2d 253, 256 (2d Cir. 1991) ("The relative plausibility or implausibility of each explanation for a particular challenge . . . may strengthen or weaken the assessment of the prosecution's explanation as to other challenges."); *Caldwell*, 159 F.3d at 651 ("A reviewing court's level of suspicion may also be raised by a series of very weak explanations for a prosecutor's peremptory challenges. The whole may be greater than the sum of its parts.").

4.

Given the manner in which the prosecutor used her peremptory challenges and other strong evidence of pretext in the record, it "blinks reality" to deny that Richard was struck because of her race. *See Miller-El II*, 125 S.Ct. at 2340. In reaching this conclusion, the court is mindful of the deference accorded to state court findings under the AEDPA. This is particularly true of credibility determinations in *Batson* cases. *See Moody*, 2007 WL 102870 at *5 (evaluation of prosecutor's justification for exercising peremptory challenges "should lie solely in the province of the trial judge"). Indeed, this court has found only one reported decision since the AEDPA was enacted

where the Fifth Circuit granted habeas relief based on a *Batson* violation.  *See Rideau v. Whitley*, 237 F.3d 472 (5th Cir. 2000).[7]  While the AEDPA standards are demanding, they are not insatiable:

> Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.  Deference does not by definition preclude relief.  A federal court can disagree with a state court's [factual] determination and, when guided by the AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.

*Miller-El I*, 123 S.Ct. at 1041.  Such is the case with respect to the state court's assessment of the prosecutor's hostility argument.  In light of evidence that the prosecutor used eight of 11 peremptory challenges against all of the African-Americans on the jury panel, offered several pretextual reasons for striking two African-American jurors, and misstated Cynthia Richard's position on punishment, it was objectively unreasonable for the trial judge to accept the prosecutor's purely subjective explanation that Richard exhibited hostility toward the state, particularly when the judge admittedly observed no such hostility.[8]  This ground for relief should be sustained.

---

[7]  The court notes that the habeas petition in *Rideau* was filed on July 24, 1994-- 21 months before the effective date of the AEDPA.  Although the appeal was decided more than six years later, it was not subject to the AEDPA standards of review.  *Rideau*, 237 F.3d at 476 n.2, *citing Lindh v. Murphy*, 521 U.S. 320, 326-27, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

[8]  The court distinguishes this case from *Collins*, where the Supreme Court held it was not unreasonable for the trial judge to allow a peremptory strike against an African-American juror who "rolled her eyes in response to a question from the court," even though the judge did not observe such behavior.  *Collins*, 126 S.Ct. at 973.  In *Collins*, unlike the instant case, the prosecutor gave other reasons for striking the African-American juror, such as her youth and lack of ties to the community, both of which could be objectively verified.  *Id.* at 975.  Moreover, the prosecutor struck a white juror with the same characteristics.  *Id.*  On those facts, it was not objectively unreasonable for the trial judge to accept the prosecutor's uncorroborated representation that the African-American juror "rolled her eyes in response to a question from the court."  By contrast, the only legitimate reason offered by the prosecutor for striking Richard was her perceived hostility toward the state.  Every other reason for striking this juror was specifically rejected by the trial judge.  Under these circumstances, it was unreasonable for the judge to give the prosecutor the benefit of the doubt.

## C.

Petitioner further contends that he received ineffective assistance of counsel at trial and on appeal because his lawyers did not object to the use of extraneous offense evidence on double jeopardy grounds. Respondent counters that this claim is barred from federal habeas review because it was never presented to the Texas Court of Criminal Appeals and any attempt to do so at this juncture would be futile.

## 1.

A federal court may not consider the merits of a habeas claim if a state court has denied relief due to a procedural default. *Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). Only procedural rules that are firmly established and regularly followed by state courts can prevent habeas review of federal constitutional rights. *Hathorn v. Lovorn*, 457 U.S. 255, 262-63, 102 S.Ct. 2421, 2426, 72 L. Ed.2d 824 (1982). Article 11.07 of the Texas Code of Criminal Procedure prohibits a second habeas petition if the petitioner urges grounds therein that could have been, but were not, raised in his first habeas petition. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (Vernon Supp. 2003).[9] This statute constitutes an adequate state procedural bar for

---

[9] The statute provides, in relevant part, that:

> (a)     If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

> (1)     the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

> (2)     by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt . . .

purposes of federal habeas review.  *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir.), *cert. denied*, 115 S.Ct. 2603 (1995).  The procedural bar doctrine also applies to unexhausted claims if the state court would likely dismiss a successive habeas petition under article 11.07.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991) (procedural default occurs when prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").

2.

Petitioner raised two ineffective assistance of counsel claims in his state writ.  In one ground for relief, petitioner argued that trial counsel failed to interview and secure the attendance of material witnesses, file pretrial motions to suppress the results of a suggestive photo line-up, and challenge the admissibility of three written confessions.  (St. Hab. Tr. at 7-12).  In his second ground, petitioner criticized his appellate lawyer for failing to challenge the factual sufficiency of extraneous offense evidence.  (*Id.* at 7, 12).  Nowhere in his state writ did petitioner even mention, much less argue, that counsel was ineffective for failing to object to the use of extraneous offenses on double jeopardy grounds.  The court finds that a Texas court, presented with this claim in a successive habeas petition, would likely find it barred under article 11.07.  Consequently, this ground for relief is barred from federal habeas review.  *Coleman*, 111 S.Ct. at 2557 n.1; *see also Nobles v. Johnson*, 127 F.3d 409, 422-23 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1845 (1998).

---

TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a).

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be conditionally granted.  The writ should issue unless petitioner is retried within 90 days after these findings are approved by the district judge.

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party may file written objections to the recommendation within 10 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:   March 9, 2007.



JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE