IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CECIL KEITH HAYES | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-05-CV-1974-M |
| NATHANIEL QUARTERMAN, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

This matter comes before this Court on review of United States Magistrate Judge Jeff Kaplan's Findings and Recommendation. Both the petitioner and the respondent filed objections. After making an independent review of the record in this case, this Court rejects the Recommendation of Magistrate Judge Kaplan as to the *Batson* issue, but accepts the Findings, Conclusions and Recommendation as to the ineffective assistance issue. The petitioner's writ of habeas corpus is DENIED.

## I. Factual Background and Procedural History

Petitioner Cecil Keith Hayes was convicted of aggravated armed robbery in state court in Dallas County, Texas. Consequently, he was sentenced to seventy years confinement. During the voir dire portion of his trial, Hayes objected to the prosecutor's use of her peremptory challenges to strike all of the eligible African-Americans from the jury. (SF-II, 167.)

Texas law provides both the prosecution and the defense with peremptory challenges. TEX.

CRIM. PROC. CODE ANN. art. 35.15(b) & (d). Although peremptory challenges may generally be exercised without an explanation or justification, parties may not use peremptory challenges to strike jurors on the basis of race. *Swain v. Alabama*, 380 U.S. 202, 223 (1965). TEX. CRIM. PROC. CODE ANN. arts. 35.14 and 35.261. A racial basis for the exercise of peremptory challenges violates the Fourteenth Amendment to the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 85 (1986).

*Batson* established the framework by which courts analyze assertions that a prosecutor has struck eligible jurors on the basis of race. *Moody v. Quarterman*, 476 F.3d 260, 267 (5th Cir. 2007). A *Batson* objection proceeds in this way:

> (1) a defendant must make a prima facie showing that the prosecutor exercised his peremptory challenge on the basis of race; (2) the burden then shifts to the prosecutor to articulate a race-neutral reason for striking the juror in question; and (3) the trial court must determine whether the defendant carried his burden of proving purposeful discrimination.

*Id*. at 266-67. At the second stage, the prosecutor must "articulate legitimate, clear, and reasonably specific explanations for each of the challenged strikes." *U.S. v. Wallace*, 32 F.3d 921, 925 (5th Cir. 1994).

Here, Hayes established a prima facie case of race discrimination by showing that the prosecutor had attempted to use her peremptory challenges to exclude all eight of the eligible African-American venire members. *See Harris v. Kuhlmann*, 346 F.3d 330, 346 (2d Cir. 2003) (prosecutor's use of peremptory challenges to remove all five of the African-Americans from the jury pool constituted a prima facie case of race discrimination). The state offered specific, race-neutral reasons for striking each African-American venire member, including those whose striking is at issue in this matter.

Regarding Gertrude Hashaway, venire member Number 6, the prosecutor explained:

> We struck Number 6, she - - first and foremost, she was asleep for a large portion of the voir dire. She is extremely grandmotherly. She had - - she seemed rather clueless in response to the questions, especially in response to the Judge's questions. I mean, she was sleeping, and then it would be kind of in and out, and her response, she had no response, in fact, to most of the Judge's questions. The other people would shake their head or answer "yes" or "no," or something to that effect. When she wasn't asleep, she was clueless, and she didn't appear to understand what was going on, certainly concepts and certainly questions. She seems like a very nice lady, but very grandmotherly, and we feel that this is a punishment case, and that aspect of it concerned us.

(SF-II, 167-68.)

The Prosecutor explained that she struck Cynthia Richard, venire member Number 15, because:

> [Richard] had no response to the Judge's questions. Her head didn't shake. She didn't answer out loud. She just sort of sat there. She received a bad juror rating on an assault with deadly weapon. Why that in and of itself does not - - is not sufficient cause, in a combination of other things, that can be one thing that's considered. I think the most important thing, she was seriously hostile to the State. She clearly - - her body language. She had absolutely no sense of humor. She was scowling at me. I wasn't comfortable with her looking at me. She also was a teacher, which they're notoriously liberal in - - especially in their punishment, as we indicated earlier. This is, we feel, a punishment case, and she as well indicated three in her reasoning as her [sic] punishment, which was rehabilitation.

(*Id*. at 169.)

With respect to Linda Denise Jackson, venire member Number 16, the prosecutor explained:

> Juror Number 16, she is - - well, changed her answers, gave inconsistent answers, indicated she would need a gun to convict, even after [an] explanation [of the applicable law], then changed her answers with [the defense counsel,] Mr. Roberts. She, as well, mentioned three as a punishment of - - rehabilitation factor as the punishment. She - - it did concern us when she changed her answer with Mr. Roberts. What she said was, "Well, if I believe, if I believe," kept harping on the "if I believe," sort of implying that she might have a higher burden of proof of the State in order to believe one eyewitness, if we were unable to produce the gun. She also currently has a cousin out on bond in a pending case here in Dallas County.

(*Id*. at 169-170.)

As Magistrate Judge Kaplan recounted in his findings, at phase three of the *Batson* inquiry:

> The trial judge then called upon petitioner, through his attorney, to rebut each of the reasons given by the prosecutor for striking the African-American jurors. Regarding those panel members who allegedly changed their minds about the need to see a weapon in order to obtain a conviction, defense counsel accused the prosecutor of using her hypothetical questions as a tool for striking jurors by presenting "a slanted, one-sided explanation" of this requirement and not fully exploring the concept. [Defense] counsel further protested that he did not notice any jurors falling asleep, but if they did, the prosecutor should have brought the matter to the attention of the bailiff. As for the African-American jurors who allegedly were struck based on their belief that rehabilitation was a primary purpose of punishment, defense counsel point out that most of those jurors also believed in the punitive aspects of punishment, much like six or seven non-African-Americans who were not struck by the prosecutor. Finally, counsel argued that there was no evidence in the record to substantiate the claim that any African-American juror was confused, inattentive, hostile, or failed to respond to relevant questions. Rather, he accused the prosecutor of fabricating these subjective explanations to justify her discriminatory use of peremptory challenges.

(Findings, 9-10 (citations omitted).)

The trial court sustained the petitioner's *Batson* objection with respect to the strike the prosecutor exercised against Hashaway. Discrediting the prosecutor's reasons, the trial court stated:

> I know that the State has indicated that that juror was asleep and did not respond to the Judge's questions. The few questions I had dealt with the qualifications of the jurors, and just general questions that [were] directed to the entire panel as to whether or not they could accept certain propositions of law. I don't see that that is proper reason for striking. I think that counsel, in addition, said that she was careless and grandmotherly, neither one of which I'm familiar with [as] a reason for striking a person.

(SF-II, 178.)

The trial court, however, overruled the petitioner's objections with respect to Richard and Jackson. It agreed that Jackson gave inconsistent responses, stating:

> The Court does find that Juror 11 had conflicting answers in regard to the firearm

question, and the Court would find that the State did present that question to the jurors at the - - at their voir dire in a fair manner, and that counsel for the Defendant artfully presented it, and from his persepctive, and the jurors changed their mind. The Court feels, though, that the - - that they were inconsistent responses and that the State would have the right to make a nonracial - - have a nonracial explanation for striking Juror Number 11.

    The Court makes the same ruling as to Juror Number 16 [Jackson].

(*Id*. at 177.) As for Richard, the trial court explained:

> Considering [Richard], much of the same thing as [Hashaway], no response to the Judge's question, bad jury rating. There's nothing before the Court that would indicate what that piece [sic] was or the type of case it was, and I assume that she received a bad juror rating because of the outcome of the case. She - - counsel indicated that she was hostile in her body language and had no sense of humor, and that she was a teacher and, therefore, liberal, and that she answered number three. The only one of those that I would seriously consider is the hostile and [sic] body language, and I know that some jurors do promote [sic] hostility to a particular lawyer, of the lawyer's style, of the questioning of them conducted in voir dire, and that, again, of course, would be nonracially. If you will either - - it doesn't necessarily - - is not necessarily nonracial. The State's explanation that she seemed to have some personal hostility to the assistant district attorney, and, that nothing has convinced me that it did not take place, even though I didn't see it, but wasn't necessarily looking for that, the Court will excuse that - - will hold that to be the reason - - nonracial reason for excusing that juror, the fact that the State has said that that juror was personally hostile to the district attorney, and her body language.

(*Id*. 178-79.)

On appeal, an appellate court reviews the trial court's *Batson* findings for clear error. *Wallace*, 32 F.3d at 925. When doing so, it is to give "great deference to the trial court's finding that the prosecutor's explanation was credible." *Id*. In this case, the appellate court upheld the trial court's rulings with respect to the *Batson* objections. *Hayes v. State*, 2003 WL 22064066 (Tex. App.—Eastland Sept. 4, 2003). It also affirmed both the conviction and the sentence. *Id*.

Mr. Hayes subsequently filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.

L. No. 104-132, 110 Stat. 1214 (1996). Hayes based his petition on two grounds. First, he seeks a federal review of his *Batson* objections. Second, he asserts that he received ineffective assistance of counsel at trial and on appeal because his attorney did not object to the admission of extraneous offense evidence on double jeopardy grounds.

Magistrate Judge Kaplan recommends that this Court conditionally grant Hayes's application as to the first ground, based on the conclusion that the prosecutor used her peremptory challenge in a discriminatory manner when she struck Cynthia Richard from the jury. (Findings, 21.) He further concluded that the petitioner's second ground for relief is barred from federal habeas review. Hayes does not object to the Magistrate Judge's Findings, Conclusions and Recommendation as to the second ground for relief, which this Court accepts. Both the petitioner and the respondent object to the Findings, Conclusion and Recommendation as to the first ground for relief. The petitioner objects because he concludes that a *Batson* error occurred not only as to Richards, but also as to Jackson.

The fact that the prosecutor used her peremptory challenges in an effort to strike all of the eligible African-Americans from the jury is of obvious concern. A history of racial discrimination during jury selection by the Dallas County District Attorney's Office was noted by the United States Supreme Court in *Miller-El v. Cockrell*, 537 U.S. 322 (2003) ("*Miller-El I*") *and Miller-El v. Dretke*, 545 U.S. 231 (2005 ("*Miller-El II*"). However, this Court concludes that the facts present in this case, as applied to the law, do not support granting the petition for habeas relief.

## II. Federal Review Pursuant to AEDPA

### A. Applicable Legal Standard

Under the relevant provision of AEDPA, a federal court cannot grant a state prisoner's

application for a writ of habeas corpus "unless the [State court's] adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). AEDPA further provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

When applying AEDPA to the third step of the *Batson* inquiry, this Court's task "is to 'determine whether the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary.'" *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005) (citing *Miller-El I*, 537 U.S. at 341). That task makes clear that this Court is to do far more than merely determine whether it subjectively agrees with the State court's ruling. *Moody*, 476 F.3d at 269.

### B. Findings and Recommendation of the United States Magistrate Judge

#### 1. The Magistrate Judge found that trial court's adjudication of the petitioner's *Batson* objection was objectively unreasonable.

Magistrate Judge Kaplan found that the trial court's determinations as to Richard were objectively unreasonable. Based on his examination of the record, Magistrate Judge Kaplan found that the prosecutor lacked credibility, that the trial court should have concluded that the prosecutor lacked credibility, and that, consequently, the trial court should have found her proffered reasons for striking Richard to be pretexts for discrimination.

As recounted above, the trial court overruled the *Batson* objection with respect to Richard because she purportedly projected hostility toward the prosecutor. Magistrate Judge Kaplan found

implausible the prosecutor's support for her contention that Richard was hostile, such as her scowl at the prosecutor, because of the lack of objective evidence supporting that contention. (Findings, 17.) Implausible explanations can indicate pretext. (*Id*. at 17 (citing *Miller-El I*, 537 U.S. at 339) ("implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.")) The United States Supreme Court has noted that "the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Miller-El I*, 537 U.S. at 339.

Magistrate Judge Kaplan found that "it was objectively unreasonable for the trial judge to accept the prosecutor's purely subjective explanation that Richard exhibited hostility toward the state, particularly when the judge admittedly observed no hostility." (Findings, 22.) Magistrate Judge Kaplan enumerated four reasons for this conclusion. First, the prosecutor had attempted to remove all of the eligible African-Americans from the jury panel. (*Id*.) Second, the trial court sustained a *Batson* objection to the peremptory challenge that the prosecutor had used against Hashaway. (*Id*.) Third, in the Magistrate Judge's estimation, during voir dire the prosecutor had misrepresented Richard's answer to the punishment inquiry. (*Id*. at 20.) His review of the record led him to conclude that the prosecutor had falsely asserted that Richard expressed a belief in rehabilitation, when in fact, "she believed in the punitive and deterrent aspects of punishment." (*Id*.) Fourth, the trial judge rejected four of the five explanations that the prosecutor gave for her peremptory challenge to Richard. (*Id*. at 21.)

> **2. The Magistrate Judge found that Hayes has rebutted, by clear and convincing evidence, the presumption of correctness as to the trial court's finding that the prosecutor was neutral as to Richard's race.**

AEDPA requires that the petitioner rebut the presumption of correctness of the trial court's

factual determinations by clear and convincing evidence. As the Magistrate Judge correctly explains:

> Because direct evidence of discrimination is especially rare, the Supreme Court has fashioned special rules to ease the evidentiary burdens in equal protection cases. One such rule permits proof of discriminatory intent by circumstantial evidence . . . These special rules apply with equal force in the *Batson* context.

(Findings, 17-18 (citations omitted).) After examining the four factors enumerated above, the Magistrate Judge concluded that, in this case, "the circumstantial evidence leads to the inescapable conclusion that the prosecutor struck Richard from the jury panel on account of her race." (Findings, 19.)

### C. Petitioner's Objection

Acknowledging that he need not establish that a second venire member was struck based on race, Mr. Hayes nonetheless argues that, in case the *Batson* issue is not sustained as to Richard, the prosecutor's proffered reasons for striking Jackson were a pretext for discrimination because of her race.

According to Hayes, the Magistrate Judge erred in determining that as to Jackson there was insufficient evidence of discrimination on the basis of race. The Magistrate Judge reached his conclusion after conducting a side-by-side comparison of the reasons given for striking African-American venire members with characteristics of venire members who were not struck. The United States Supreme Court has stated that this method of analysis is a "powerful" evidentiary tool. *Miller-El II*, 545 U.S. at 241. With respect to Jackson, Magistrate Judge Kaplan concluded:

> The prosecutor struck Juror No. 16, Linda Denise Jackson, because: (1) she initially indicated the need to see a gun in order to convict; (2) she gave inconsistent answers on the gun question; (3) she believed in rehabilitation; and (4) she had a cousin out on bond. Of the non-African-Americans who had at least one characteristic in common with Linda Jackson, none gave inconsistent answers to questions, implied that the state had a higher burden of proof, or had a family member out on bond.

(Findings, 14.)

Hayes's argument in support of his objection is three-fold. First, he asserts that the Magistrate Judge incorrectly applied the side-by-side method of comparison. He argues that his task "is *not* to find and compare a non-African-American juror who is identical to Veniremember Jackson in *all* respects." (Pet.'s Obj. 3 (citing *Miller-El II*, 545 U.S. at n. 6).) Rather, according to Hayes, when conducting a side-by-side comparison, a court should analyze each proffered reason to see if any non-African-American venire members displayed any of those same characteristics. If each characteristic can be matched to non-African-American venire members who were not struck, then that is an indication that the stated reason with regard to Jackson was simply a pretext. (*See* Pet. Obj. 3-5.)

Second, Hayes argues that in fact, Jackson did not provide an inconsistent answer with respect to her need to see a gun in order to convict. Rather, he asserts that she initially stated that she would need to see a gun if one was used in the commission of a crime, but that she changed her answer after the court explained the law. Thus, according to Hayes, "the prosecutor's inflated justification for exercising her strike lacks credibility." (Pet. Obj. 8.)

The record reveals the following exchanges between the prosecutor, Jackson, and the trial court:

> [Prosecutor]: You know, [seeing the gun] would make, you know, your job a lot easier, but - - and I understand that, but you understand the State is not required to bring that in. And that's okay. There's all kinds of - - you know, there are people that say, "I'm sorry, I just absolutely have to have it." That's okay if you feel that way. You feel that way, Ms. Jackson, Juror Number 16?
>
> Prospective Juror Jackson: (Nods head affirmatively.)
>
> [Prosecutor]: Is there anyone else that feels that way in the first row here, Jurors 1

through 5? Do you-all feel that way? No?

> The Court: I think, first of all, before you start, you should explain the law to them in that respect and then have them - - the effect of the law, and then take their answers.

(SF-II, 73-74.) Later, after the trial court explained the law with respect to the gun, the record reflects the following:

> [Defense Counsel]: [I]f [the witness] convince[s] you that they saw a pistol and there was a pistol, would you still have to see the pistol?
>
> Prospective Juror Jackson: I would want to.
>
> [Defense Counsel]: Well, sure. Really, we'd all like to have video of it, so then we'd know because we could see it, you know. Then we wouldn't have to guess. But there isn't one. But - - and - - I mean, really, see the question? Do you believe the witness and does that prove the case beyond a reasonable doubt? Do you believe her or him when they say they saw a pistol? If you do, then you don't need to see the pistol.
>
> Prospective Juror Jackson: Well, yeah, that's right, I would need to see the pistol.
>
> [Defense Counsel]: You would need to?
>
> Prospective Juror Jackson: If I didn't believe that person.
>
> [Defense Counsel]: Of course, if you don't believe the person, they - - they haven't proved their case beyond a reasonable doubt.
>
> Prospective Juror Jackson: Right.
>
> [Defense Counsel]: So you could get along without the pistol if you were convinced a pistol was used?
>
> Prospective Juror Jackson: I guess.
>
> [Defense Counsel]: Well, you can't guess.
>
> Prospective Juror Jackson: Okay. Yes, if he were believable, yes.

(*Id.* at 142-43.)

Third, in the alternative to his second argument, Hayes asserts that regardless of whether Jackson gave inconsistent answers with respect to the gun, venire member Newsome, a non-African-American who was not struck, also stated that he needed to see the gun in order to convict. (Pet. Obj. 8.) The record reflects that prior to the first exchange with Jackson, the prosecutor also asked Newsome whether he would need to see a gun in order to convict. (SF-II, 71.) In response, Newsome answered, "[w]ell, from the shows I've seen, yeah, normally." (*Id.*) Thus, according to Hayes, even if Jackson's answers regarding the need to see the gun were inconsistent, a non-African American who also stated that he needed to see a gun in order to convict was not struck.

### D. Respondent's Objection

Respondent Nathaniel Quarterman objects to the findings and recommendation because, he asserts, the Magistrate Judge did not grant the trial court the appropriate discretion that it is due under AEDPA and that the Magistrate Judge "never sufficiently explained what evidence clearly and convincingly rebutted the state court's credibility findings on which the state court determination relied." (*Id.*)

## III. Analysis

The key issue before this Court is fairly precise: was the trial court required, in effect as a matter of law, to deny the prosecutor's race neutral explanation for her strikes of Richard because the prosecutor lacked credibility? This Court is of the opinion that the answer to that question is no, because the petitioner did not present clear and convincing evidence that the prosecutor lacked credibility. Consequently, this Court cannot find objectively unreasonable the trial court's determination that the prosecutor was credible in explaining her strike of Richard. *See Miller-El I*, 537 U.S. at 348 ("[t]o secure habeas relief, petitioner must demonstrate that a state court's finding

of the absence of purposeful discrimination was incorrect by clear and convincing evidence, and that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court") (citation omitted). For the same reason, this Court cannot conclude that the Magistrate Judge erred in finding insufficient evidence of discrimination in the prosecutor's peremptory strike of Jackson.

### A. Venire Member Cynthia Richard

This Court rejects the Magistrate Judge's Findings, Conclusion and Recommendation regarding Richard for two reasons. First, this Court respectfully disagrees that a lack of objective evidence renders implausible the prosecutor's claim that Richard was hostile to her. There is no requirement that only objective evidence can support a prosecutor's proffered reasons for striking a juror; rather, the prosecutor's proffered reasons need only be facially valid. *Wallace*, 32 F.3d at 925. It is the defendant's task to prove that the prosecutor's explanations are invalid. *See Moody*, 476 F.3d at 267 ("[t]he ultimate burden of persuasion lies at all times with the defendant"). Requiring the prosecutor to present objective evidence to support the race-neutral validity of a peremptory strike shifts the burden of proof to the prosecutor to disprove that she had a discriminatory intent.

Second, this Court disagrees that the circumstantial evidence in this case leads to a definitive conclusion that the prosecutor lacked credibility. For instance, while explanations such as "grandmotherly" may be irrelevant reasons for striking someone from a jury, they do not necessarily indicate that the prosecutor is providing a pretextual explanation and is not credible. Rather, as the United States Supreme Court has noted:

> [T]he rule in *Batson* provides an opportunity to give the reason for striking the juror,

> and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it. It is true that peremptories are often the subjects of instinct, and it can sometimes be hard to say what the reason is. But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives.

*Miller-El II*, 545 U.S. at 251-52 (citations omitted). This Court cannot conclude that when, as here, a trial court sustains a *Batson* objection with respect to one juror, it should necessarily determine that as a consequence a prosecutor is not credible in giving explanations as to the striking of other jurors.

The Court agrees that, based on all of the circumstances, a trial court could have found that the prosecutor lacked credibility in her explanation of why she struck Richard. However, the Court does not agree that the trial court was obligated to so find. During the hearing on the *Batson* objection conducted by the trial court, Hayes could have produced evidence that the prosecutor lacked credibility. For instance, he could have called Richard as a witness and questioned her about her purported hostility, and he could have called the prosecutor and attempted to impeach her by cross-examining her about the details of the alleged hostility. Instead, his counsel did nothing to challenge the prosecutor's credibility except to state he saw no such hostility. The purpose of the hearing was to flesh out the specifics of the peremptory challenge, but no new information was uncovered to support the petitioner's view that discrimination was at work. In the Court's view, the petitioner's evidence of discrimination is neither clear nor convincing.

**B. Venire Member Linda Denise Jackson**

The petitioner's first argument regarding the peremptory strike of Jackson is that the Magistrate Judge incorrectly applied the method of comparison utilized in *Miller-El II*. The Court agrees that the petitioner is not required to find precisely matching jurors to evidence pretext. As the Supreme Court stated in *Miller-El II*,

> [i]f a prosecutor's proffered reasons for striking a black panelist applies just as well to an *otherwise similar nonblack* who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step.

545 U.S. at 241 (emphasis added). The Court did not expound upon the phrase "otherwise similar nonblack," but as the petitioner points out, "[a] per se rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable." *Id*. at 247 n.6. The Court disagrees that the Magistrate Judge required proof of an identical non-African-American juror. However, the issue is not in dispute because the reasons the prosecutor provided for striking Jackson are distinguishable from the characteristics of the seated jurors.

The prosecutor stated that she struck Jackson because, in addition to expressing a need to see a gun in order to convict, Jackson has a cousin who had a pending drug case in Dallas County. Hayes argues that this stated reason is actually a pretext for discrimination since Jackson stated she felt her cousin was being treated **fairly** by the criminal justice system, and several non-African-American venire members had family members who had been prosecuted, and they were seated though they believed their family members had been treated unfairly. However, this argument does nothing to discredit the prosecutor's explanation for striking Richard. The non-African-American venire members' relatives were all apparently tried on their charges, and no other person on the venire had a relative with a pending charge in Dallas County. In contrast, Jackson's cousin's case was still pending in Dallas County. In explaining her strike of Jackson, the prosecutor made no reference to whether Jackson felt her cousin was being treated fairly.

The petitioner's second argument regarding Jackson is that the trial court was wrong to conclude that Jackson gave inconsistent answers about her need to see a gun in order to convict. The Court concludes that Hayes has not provided clear and convincing evidence that the trial court's

adjudication of this issue was objectively unreasonable. Based on an examination of the exchange between Jackson, the parties, and the trial court, this Court finds that it was reasonable for the trial court to have concluded that Jackson did give inconsistent answers about the need to see a gun.

The petitioner's third argument is that even if Richard did change her answer about needing to see a gun in order to convict, Newsome, a non-African-American venire member, also stated that he would need to see a gun in order to convict yet was seated. However, Newsome and Jackson are distinguishable because Newsome, unlike Jackson, did not give inconsistent answers after the trial court explained that, contrary to the shows that Newsome had seen, the state was not required to produce the gun. Jackson, on the other hand, gave arguably inconsistent answers even after the law was explained.

## IV. Conclusion

After conducting a review of the pleadings, files and records in this case, and the Findings and Recommendation of the United States Magistrate Judge, this Court is of the opinion that the petitioner, Cecil Keith Hayes, has not presented clear and convincing evidence that the trial court's adjudication of the *Batson* issue in this case was objectively unreasonable. Consequently, this Court rejects the Findings and Recommendation of the Magistrate Judge to grant the habeas petition on those grounds, but accepts the recommendation to deny it on the ineffective assistance grounds asserted. The Petitioner's application for writ of habeas corpus is thus DENIED.

SO ORDERED this 18th day of December, 2007.

_____
BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS